IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Julio Rocha Gonzalez, | : | |
| | : | |
| Petitioner, | : | Case No. 1:26-cv-77 |
| | : | |
| v. | : | |
| | : | Judge Susan J. Dlott |
| Robert Lynch, Director of Enforcement | : | |
| and Removal Operations, Detroit Field | : | |
| Office, U.S. Immigration and Customs | : | Order Granting Petition for Writ of |
| Enforcement, *et al.*, | : | Habeas Corpus |
| | : | |
| Respondents. | : | |

Pending before the Court is the Petition for Writ of Habeas Corpus ("Habeas Petition")

filed by Petitioner Julio Rocha Gonzalez.  (Doc. 1.)  Rocha Gonzalez, a native and citizen of

Mexico, challenges his detention at the Butler County, Ohio Jail in the custody of Respondents,

including the United States Immigration and Customs Enforcement ("ICE").  He argues that he

is being unlawfully held and denied a constitutionally adequate custody redetermination

hearing—a bond hearing—in a misapplication of the Immigration and Nationality Act ("INA"),

8 U.S.C. §§ 1225(b)(2)(A) and 1226(a).  As the Court has done in analogous cases, the Court

here again holds that detainees like Rocha Gonzalez, who entered the country more than twenty-

five years ago without an inspection, are entitled to a bond hearing under § 1226(a).[1]  Because

Rocha Gonzalez's continued detention without a bond hearing violates the INA, the Court will

**GRANT** the Habeas Petition.

---

[1]  *See e.g.*, *Ramirez Quintana v. Lynch*, 1:25-cv-919, 2026 WL 746359 (S.D. Ohio Mar. 17, 2026); *Valdez Lopez v. Raycraft*, No. 1:26-cv-68, 2026 WL 900063 (S.D. Ohio Apr. 2, 2026); *Badalov v. Noem*, No. 1:26-cv-162, 2026 WL 943586 (S.D. Ohio Apr. 8, 2026).

1

I.      **BACKGROUND**

A.      **Factual History**

Rocha Gonzalez is a citizen of Mexico who entered the United States without inspection at an unknown place in 1998.  (Doc. 1-2 at PageID 11.)  He asserts that he resides in Hamilton, Ohio with his wife and three children, two of whom are United States citizens.  (Doc. 1 at PageID 5; Doc. 1-5 at PageID 16–17.)  He has no criminal record.  (Doc. 1-2 at PageID 11; Doc. 12-1 at PageID 66.)  He asserts that he works in construction.  (Doc. 12-4 at PageID 79.)

Rocha Gonzalez was encountered by a Butler County, Ohio Sheriff Deputy on November 21, 2025 during a traffic stop.  (Doc. 12-1 at PageID 65.)  The Sheriff Deputy transferred him to the custody of ICE after determining that he entered the country unlawfully.  (*Id.*)  He is detained at the Butler County Jail.

On November 22, 2025, the Department of Homeland Security ("DHS") served Rocha Gonzalez with a Notice to Appear before an Immigration Judge with the United States Department of Justice ("DOJ") in Cleveland, Ohio on December 23, 2025.  (Doc. 12-2 at PageID 67.)  On the Notice to Appear form, DHS checked the box stating that Rocha Gonzalez was "an alien present in the United States who has not been admitted or paroled."  (*Id.*)  DHS did not check the two alternative boxes stating that he was "an arriving alien" or that he had been "admitted to the United States, but [was] removable for the reasons stated below."  (*Id.*)  DHS made the following factual allegations:

1. You are not a citizen or national of the United States;

2. You are a native of MEXICO and a citizen of MEXICO;

3. You arrived in the United States at or near unknown place, on or about unknown date;

2

4. You were not then admitted or paroled after inspection by an Immigration Officer;

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

(*Id.*)  DHS charged Rocha Gonzalez with being an alien present in the United States without being admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i) and with entering the United States without valid required entry, identification, and nationality documentation in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I).  (*Id.* at PageID 70.)

Rocha Gonzalez filed a Motion for Custody Redetermination—a bond hearing—with the Immigration Judge on or about December 22, 2025.  (Doc. 12-4 at PageID 78–81.)  The Immigration Judge denied him a bond hearing on the grounds that she did "not have jurisdiction to redetermine bond in this case."  (Doc. 1-3 at PageID 13.)  But she also stated that she would set a $40,000 bond if she did have jurisdiction.  (*Id.*)  Rocha Gonzalez filed an appeal of the bond denial with the Board of Immigration Appeals ("BIA").  (Doc. 12-5 at PageID 82.)

In the removal proceedings before the Immigration Judge, Rocha Gonzalez filed a request for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).  (Doc. 19-1 at PageID 114.)  The Immigration Judge denied that request at a hearing held on March 9, 2026.  (*Id.* at PageID 113–116.)  She granted Rocha Gonzalez's request for post-conclusion voluntary departure to Mexico under INA § 240B(b), 8 U.S.C § 1229c, ordering that he should depart by May 8, 2026.  (*Id.* at PageID 114.)  Rocha Gonzalez appealed the decision to the BIA, where it remains pending.  (Doc. 19-2.)

**B.    Procedural Posture**

Rocha Gonzalez filed his Habeas Petition on January 28, 2026 against Respondents

3

Robert Lynch in his official capacity as the Director of the Detroit Field Office of ICE's Enforcement and Removal Operations division; Kristi Noem in her official capacity as Secretary of DHS; and the Executive Office for Immigration Review, a division of the DOJ.  (Doc. 1.)  He alleges that Respondents have unlawfully detained him without an individualized bond hearing in violation of the INA at 8 U.S.C. § 1226(a), which provides for discretionary detention and an individualized bond hearing.  (*Id.*)

Respondents filed their Return of Writ to the Habeas Petition on February 13, 2026. (Doc. 12.)  They assert that Rocha Gonzalez is being properly detained under 8 U.S.C. § 1225(b)(2)(A).  (*Id.* at PageID 44–56.)  They also assert that the Court lacks jurisdiction and that Rocha Gonzalez needs to exhaust administrative remedies before seeking habeas relief.  (*Id.* at PageID 56–62.)

Finally, Rocha Gonzalez filed a Reply, and Respondents filed a Notice of Custody Status and Supplemental Authority.  (Docs. 15, 19.)

## II.      LAW AND ANALYSIS

The Court first will determine the threshold issues of jurisdiction and administrative exhaustion.  Then the Court will briefly address the applicability of a class action decision from the Central District of California before turning the merits of the case.  The key issue is whether Rocha Gonzalez's detention is governed by 8 U.S.C. § 1225(b)(2)(A)—in which case detention is mandatory—or by 8 U.S.C. § 1226(a)—in which case Rocha Gonzalez is eligible for a bond hearing.

### A.      Jurisdiction

Respondents argue that the Court lacks jurisdiction to review Rocha Gonzalez's claims under 8 U.S.C. §§ 1252(e)(3) and (g).  This argument requires no analysis.  This Court joins

4

others in holding that district courts have jurisdiction over habeas petitions filed by noncitizens who are challenging their mandatory detention without bond. *See*, *e.g.*, *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (concluding "that § 1252(g) does not bar judicial review of Kong's challenge to the lawfulness of his detention"); *Lemus v. Lynch*, No. 4:26-CV-203, 2026 WL 496731, at *2 (N.D. Ohio Feb. 23, 2026) ("This Court has jurisdiction to determine whether a detained immigrant is statutorily entitled to a bond hearing under the INA."); *Ortiz Gutierrez v. Raycraft*, No. 1:26-CV-69, —F.Supp.3d—, 2026 WL 456065, at *2 (S.D. Ohio Feb. 18, 2026) (overruling argument that the district court lacked jurisdiction under §§ 1252(e)(3) or (g) over a challenge to detention without a bond hearing); *Puerto-Hernandez v. Lynch*, 808 F.Supp.3d 802, 811 (W.D. Mich. 2025) ("This action falls outside of the narrow scope of § 1252(g) and within this Court's jurisdiction."); *Ramirez v. Lynch*, No. 1:25-CV-1408, — F. Supp.3d —, 2025 WL 3267771, at *2 (W.D. Mich. Nov. 24, 2025) (overruling a § 1252(e)(3) jurisdictional challenge because the petitioner was challenging "the lawfulness of his detention without a bond hearing" and not "the validity of the statutory scheme itself"); *Lopez v. Olson*, No. 3:25-CV-654-DJH, — F.Supp.3d—, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) (finding jurisdiction to review legality of noncitizen's detention).

B.      **Administrative Exhaustion**

Respondents also contend that the Habeas Petition should be dismissed because Rocha Gonzalez did not first exhaust his administrative remedies. Rocha Gonzalez asserts that administrative exhaustion is not mandatory and should not be required here. Immigration judges are refusing to provide custody redetermination hearings—bond hearings—on the authority of *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220, 229 (BIA Sept. 5, 2025). In that case, the BIA held that noncitizens who are present in the United States without admission are subject to

5

mandatory detention under 8 U.S.C. § 1225(b)(2)(A), without eligibility for bond, during the duration of their removal proceedings. *Id.* at 220, 229. For the reasons below, the Court will not require prudential exhaustion in this case.

Generally, a petitioner must exhaust administrative remedies before filing a habeas corpus petition under 28 U.S.C. § 2241, although the statute itself does not expressly contain such a requirement. *McCarthy v. Madigan*, 503 U.S. 140, 144–145 (1992), *superseded by statute as stated in Woodford v. Ngo*, 548 U.S. 81 (2006). The decision to require exhaustion is within the discretion of the district court when it is not mandated by statute. *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025) (citing *McCarthy*, 503 U.S. at 144).

There is no clear statement from Congress "that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention." *Salvador F.-G. v. Noem*, No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025). Courts within the Sixth Circuit have applied the Ninth Circuit's test set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983), for prudential exhaustion. *See, e.g.*, *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 778 (E.D. Mich. 2025). Under that test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id*. These factors weigh against imposing prudential exhaustion here. Statutory interpretation

6

issues are properly addressed by federal courts.

Alternatively, even when a district court might normally require prudential exhaustion, the court may waive the requirement. Requiring exhaustion in this case would very likely subject Rocha Gonzalez to unreasonable delay, as appeals to the BIA of an immigration judge's decision denying bond often take six months or longer to resolve. *Lopez-Campos*, 797 F.Supp.3d at 778–779 (citing *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1245 (W.D. Wash. 2025)); *see also Velasco-Sanchez*, 2025 WL 3553672, at *5 ("Exhaustion is also excused when delay means hardship.") (citation omitted). Finally, prudential exhaustion also is not required where it would be futile, as it almost certainly would be here. By its decision in *Matter of Yajure Hurtado*, the BIA has already rejected the statutory argument that Rocha Gonzalez presents to this Court. Respondents do not contend that the BIA is likely to reverse course on its *Matter of Yajure Hurtado* ruling.

For these reasons, the Court finds that prudential exhaustion was not required for Rocha Gonzalez to bring this action.

## C.      *Maldonado Bautista v. Santacruz*

The Court turns now to the merits of the Habeas Petition. Rocha Gonzalez initially moved for relief on the basis that he is entitled to a bond hearing as a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, 5:25-cv-01873-SSS-BFM, — F.Supp.3d—, 2026 WL 468284, at *10 (C.D. Cal. Feb. 18, 2026). The district court in *Maldonado Bautista* most recently purported to vacate *Matter of Yajure Hurtado*, the BIA decision upon which Immigration Judges are relying to hold that noncitizens like Rocha Gonzalez are detained under 8 U.S.C. § 1225(b)(2)(A) and not entitled to bond hearings. 2026 WL 468284, at *10. The Government has appealed that decision. The Ninth Circuit has

7

temporarily stayed enforcement of the judgment in favor of the Bond Eligible Class outside the Central District of California and the decision vacating *Matter of Yajure Hurtado*.  *Maldonado Bautista v. United States DHS*, No. 26-1044, Dkt 5.1, Order (9th Cir. Mar. 6, 2026).  The Court will not grant habeas relief on the basis of *Maldonado Bautista*.

**D.      INA Claim**

Finally, the Court will examine Rocha Gonzalez's claim that his continued detention without a bond hearing violates the INA.  His continued detention without a bond hearing is unlawful if his detention is governed by 8 U.S.C. § 1226(a).  But his detention is mandatory if it is governed by 8 U.S.C. § 1225(b)(2)(A).  As explained below, the Court is persuaded by that "[d]etention under § 1226(a) attaches where DHS encounters a noncitizen within the interior [of the United States] after admission or after a substantial period of continuous presence, whereas § 1225(b) applies only where the individual encountered is 'seeking admission' at the border or its functional equivalents."  *Ortiz Guiterrez*, 2026 WL 456065, at *3.

The Court starts with the text of the two INA detention provisions.  When faced with a question of statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'"  *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)).  The Court must read each word in the statute in line with "its ordinary, contemporary, common meaning."  *Ky. v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)).  If the plain text of the statute leaves ambiguity, courts turn to the canon that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) ("statute(s)

should be construed so that effect is given to all [their] provisions[.]") (citation omitted).

       1.       **8 U.S.C. § 1225(b)**

Section 1225(b)(2)(A) imposes mandatory detention of an "applicant for admission" who is "seeking admission" if an immigration officer has determined that the applicant is not entitled to admission in the United States:

> **§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**
>
> * * *
>
> **(b) Inspection of applicants for admission**
>
> * * *
>
> **(2) Inspection of other aliens**
>
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (italicized emphasis added).  This statutory section defines an "applicant for admission" in § 1225(a)(1) as an alien "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ."  8 U.S.C. § 1225(a)(1).  Additionally, "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13(A).  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)."  *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1111 (E.D. Cal. 2025) (citation omitted).  "Other than this limited exception (which is not

9

implicated here), detention under § 1225(b)(2) is considered mandatory." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 484 (S.D.N.Y. 2025) (cleaned up); *see also Lopez-Campos*, 797 F.Supp.3d at 777.

> **2.      8 U.S.C. § 1226**

Section 1226(a), on the other hand, allows for discretionary detention, as shown by the use of the word "may":

> **§ 1226. Apprehension and detention of aliens**
>
> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> (1) *may* continue to detain the arrested alien; and
>
> (2) *may* release the alien on--
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; [ . . .]

8 U.S.C. § 1226(a) (italicized emphasis added).[2]  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez-Campos*, 797 F.Supp.3d at 777 (stating that noncitizens under § 1226(a) "have a right to request a custody redetermination (*i.e.,* bond hearing) before an Immigration Judge") (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  The Immigration Judge then "evaluates whether there is a risk of

---

[2]  Subsection (c), recently amended by the Laken Riley Act, makes detention mandatory for aliens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes, but it does not apply here.  8 U.S.C. § 1226(c).

nonappearance or danger to the community." *Lopez-Campos*, 797 F.Supp.3d at 777.

### 3.      Interpretation

As of the writing of this decision, the Sixth Circuit has yet to decide whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) governs detention under these circumstances.[3]  District court opinions within the Sixth Circuit have diverged, but the majority are in favor of the Petitioner's position.  *Compare*, *e.g.*, *Ortiz Guiterrez*, 2026 WL 456065, at \*3–5 (joining majority of jurists to find § 1226(a) governed petitioner's detention and respondents' detaining the petitioner without bond violated his due process rights) *with Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at \*12–14 (S.D. Ohio Dec. 15, 2025) (holding § 1225(b)(2)(A) governed the petitioner's detention and dismissing habeas petition).[4]

The Court concludes that the plain language of § 1226(a) more naturally aligns with Rocha Gonzalez's detention, while the application of § 1225(b)(2)(A) to Rocha Gonzalez's detention requires a strained statutory interpretation and is not persuasive.  The present-tense language used in § 1225(b)(2)(A) does not match Rocha Gonzalez's status because he was not "seeking admission" when he was detained by Respondents in November 2025.  *See, e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 781 ("Respondents completely ignore the term 'seeking' when attempting to broaden what 'seeking admission' means.  This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon

---

[3] The Court is mindful that the issue is before the Sixth Circuit in the consolidated appeal of *Juan Lopez-Campos v. Raycraft*, No. 25-1965; *Juan Sanchez Alvarez v. Noem*, No. 25-1969; *Jose Contreras-Cervantes v. Raycraft*, No. 25-1978; *Jesus Pizarro Reyes v. Raycraft*, No. 25-1982.

[4] One unofficial tally of district court opinions can be found at Politico, Our Running List of Judges Who Have Ruled on ICE's Mass Detention Policy, https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614?_sp_pass_consent=true, (last viewed 3/30/2026).

inspection. Noncitizens who are just 'present' in the country—those like [Petitioner], who have been here for years upon years and never proceeded to obtain any form of citizenship … —are not 'seeking' admission."); *Lopez Benitez*, 795 F.Supp.3d at 488–489 (the phrase "seeking admission" necessarily implies present-tense action) (cleaned up); *Urrutia-Diaz v. Ladwig*, No. 2:25-cv-03098, 2025 WL 3689158, at *6 (W.D. Tenn. Dec. 19, 2025) ("seeking" suggests action such that the noncitizen must actively be seeking admission and not simply residing in the country after entering unlawfully); *Del Villar v. Noem*, No. 4:25-cv-00137, 2025 WL 3231630, at *4–5 (W.D. Ky. Nov. 19, 2025) (finding that even if the petitioner might be an applicant for admission since he did not lawfully enter the country after inspection and authorization by immigration officer, the petitioner was not "seeking" admission since he had been in the country for more than 25 years) (quoting *Lopez-Campos*, 797 F.Supp.3d at 782).[5]

Further, continuing to look at the plain language of the statute, "[f]or section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, 792 F.Supp.3d 211, 214 (D. Mass. 2025); *see also Patel v. Crowley*, No. 25 C

---

[5] As the court in *Lopez Benitez* aptly analogized:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there.***

795 F.Supp.3d at 489.

11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025).  It does not appear that *any* of these findings were made here, since Rocha Gonzalez was not inspected by an immigration officer upon entering the country.  (Doc. 12-2 at PageID 67.)  After Rocha Gonzalez was taken into custody, DHS issued a Notice to Appear and checked the box charging him with being "an alien *present* in the United States who has not been admitted or paroled."  (*Id.* (emphasis added).)  DHS did not check the box for the alternative option of charging him with being "an arriving alien."  (*Id.*)  It is inconsistent and strains credulity for Respondents to suggest that the two potential charges are categorically the same when the Notice to Appear form treats them as alternative and distinct categories.  *See Patel*, 2025 WL 2996787, at *5.  As in *Patel*, the Government affirmatively treated Rocha Gonzalez as being detained under § 1226(a) on the Notice form, and it cannot now be heard to change its position to claim that he is detained under § 1225(b)(2)(A).  *See id*. at *5–6.  In sum, under the first rule of statutory interpretation—to give plain, ordinary meaning to each word in the statutes at issue—this Court finds that Rocha Gonzalez's detention is governed by § 1226(a), not § 1225(b)(2)(A).

The Court's conclusion is buttressed by the Supreme Court's seminal opinion in *Jennings*, albeit in dicta.  The Supreme Court in *Jennings* drew a clear distinction between noncitizens detained while seeking admission and noncitizens detained after already being in the country:

> . . . U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

583 U.S. at 289 (emphasis added); *see also*, *e.g.*, *Lopez-Campos*, 797 F.Supp.3d at 782 ("Put simply, Section 1225 applies to noncitizens 'arriving to the country' and Section 1226 governs

13

detention of noncitizens 'already in the country.'") (quoting *Jennings*, 583 U.S. at 288); *Sanchez Alvarez v. Noem*, 807 F.Supp.3d 777, 787 (W.D. Mich. 2025) ("*Jennings* noted that § 1225 is part of the 'process of decision [that] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.' *** Section 1226, however, applies to the process of 'arresting and detaining' aliens who are already living within the United States but are still subject to removal.") (quoting *Jennings*, 583 U.S. at 287), *on appeal* No. 25-1969 (6th Cir.); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025) ("Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall…. § 1226(a) is the 'default rule' and 'applies to aliens already present in the United States.'") (quoting *Jennings*, 583 U.S. at 288, 301), *on appeal*, No. 25-1982 (6th Cir.). *Jennings* supports the conclusion that Rocha Gonzalez, who entered the United States in 1998 and has been residing in Ohio, is being detained under § 1226(a).

The Court holds that Respondents' refusal to provide Rocha Gonzalez with a bond hearing violates the INA, 8 U.S.C. § 1226(a). *See Jennings*, 583 U.S. at 306 (finding that regulations provide right to bond hearing for detentions under § 1226(a)); *Lopez-Campos*, 797 F.Supp.3d at 777 (same).

### E.    Attorney Fees and Costs

Rocha Gonzalez seeks attorney fees and costs. (Doc. 1 at PageID 8.)   The Equal Access to Justice Act permits a court to award "reasonable fees and expenses of attorneys, in addition to costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(b).  The Court will consider a motion for any attorneys fees and costs filed in conformity with the procedures set forth in the

14

statute and the local rules.

### III.    CONCLUSION

For the above reasons, the Court **FINDS** that Rocha Gonzalez is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but instead is detained under 8 U.S.C. § 1226(a). Therefore, detaining him without a bond hearing violates his statutory rights.  The Court **ORDERS that within seven days of entry of this Order,** Respondents shall either (1) provide Rocha Gonzalez with a due process compliant, individualized bond redetermination hearing before an Immigration Judge, at which the Government shall bear the burden of persuasion justifying his continued detention; or (2) release Rocha Gonzalez from custody.  If Respondents choose to provide a bond hearing in lieu of releasing Rocha Gonzalez from custody, then:

(1) Respondents shall provide a copy of this order to the Immigration Judge before any hearing;

(2) the Immigration Judge shall have jurisdiction over the matter and be empowered to grant bond;

(3) Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.  *See Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024), *reh'g en banc denied* (Oct. 24, 2025); *Soto-Medina v. Lynch*, No. 1:25-CV-1704, — F. Supp. 3d —, 2026 WL 161002, at *9–11 (W.D. Mich. Jan. 21, 2026); *Azalyar v. Raycraft*, No. 1:25-cv-916, — F.Supp.3d —, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026); and

(4) the Immigration Judge shall consider whether less restrictive alternatives to detention can reasonably address the Government's interest, as well as

Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 WL 2938993, at *1 (S.D.N.Y. Oct. 16, 2025).

The Court further **ORDERS that within ten days of entry of this Order**, Respondents shall file a report informing the Court whether and when a due process compliant, bond redetermination hearing was held or whether and when Rocha Gonzalez was released from custody.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge